■ In the Matter of KALI WILLIAMS, Petitioner, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, Respondent.—Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Clinton County) to review a determination of respondent which found petitioner guilty of violating a prison disciplinary rule.

Just before noon on May 28, 1991, 53 inmates confined to the special housing unit (hereinafter SHU) at Southport Correctional Facility in Chemung County left their outdoor recreational pens in the facility's A-Block and took control of the outdoor exercise yard and the staircase leading to A-Block's roof. Five correction officers were assaulted, threatened and taken hostage by the inmates, who remained in full control of the yard for almost 26 hours. Following extensive negotiations, the inmates relinquished control of the area at 2:30 P.M. on May 29, 1991.

Petitioner, an inmate in the yard at the time of the riot, was transferred to Clinton Correctional Facility in Clinton County where he was served with a misbehavior report which alleged a violation of 7 NYCRR 270.2 (B) (5) (i) (rioting) (hereinafter rule 104.10). The report, authored by Correction Officer R. Farrell, alleged that petitioner was "observed participating in the [takeover] of A-Block yard". Petitioner's disciplinary hearing commenced on June 11, 1991 and continued on July 1, 1991. Petitioner denied the charge, testifying that he had been forced from his recreation pen by tear gas and, although he was in the yard at the time of the incident, he did not participate in "taking over the yard". Petitioner did not call the author of the misbehavior report or any other witness, and the hearing was then adjourned at petitioner's request to

give the Hearing Officer an opportunity to view videotapes* of the incident. Petitioner made no request to view these videotapes.

On June 28, 1991 the Hearing Officer, along with several other Hearing Officers required to conduct disciplinary hearings arising from the Southport riot, viewed the videotapes and approximately 200 photographs of the incident. The Hearing Officer averred that he "did not discuss specific questions and issues involved in petitioner's disciplinary hearing with other hearing officers". In a later affidavit describing the viewing session, James Raymond, an investigator with respondent who made the presentation, stated that "any information communicated by me * * * was general in nature, and solely for purposes of orienting the officers to the events shown in the visual materials".

Thereafter, on July 1, 1991, the Hearing Officer resumed petitioner's disciplinary hearing and found petitioner guilty of the charge. The Hearing Officer indicated that "although it was impossible * * * to identify [petitioner] as a specific participant in terms of what [he] actually did or [his] degree of culpability", he found petitioner guilty because the videotapes indicated that "[e]very inmate had left his pen prior to gas being dispensed". Petitioner was sentenced to five years' confinement in SHU and five years' loss of good time. Following unsuccessful administrative review, petitioner brought this CPLR article 78 proceeding to annul the determination.

We begin with the well-settled proposition that "[a] prison disciplinary determination must be supported by substantial evidence, meaning that in order to sustain a determination of guilt, a court must find that the disciplinary authorities have offered such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" *(Matter of Bryant v Coughlin,* 77 NY2d 642, 647; *see, People ex rel. Vega v Smith,* 66 NY2d 130, 139-140). In a series of cases involving rule 104.10 violations stemming from another prison uprising, this Court held that "the misbehavior report, together with evidence that the petitioning inmate was out of his cell during the uprising, was sufficient to support the determinations of guilt" *(Matter of Vitiello v Coughlin,* 159

---

* The videotapes consist of a "black and white film, without sound, taken from a fixed point viewing the A block yard, showing the incident from its beginning [and] a color film, with sound, taken with a hand-held camera from different perimeter points commencing approximately twenty minutes after the start of the riot".

AD2d 791, 792; *see, Matter of Torres v Coughlin,* 161 AD2d 1080, 1082; *Matter of Smith v Coughlin,* 161 AD2d 1082, 1083; *Matter of Fletcher v Coughlin,* 161 AD2d 869, 870; *Matter of Rosado v Coughlin,* 157 AD2d 898, 899, *lv denied* 75 NY2d 707; *Matter of Collins v Coughlin,* 156 AD2d 793, *lv denied* 75 NY2d 707).

In our view, the determination of guilt here was adequately supported by substantial evidence. The videotapes reveal that the inmates achieved a swift and uniform departure from the four-man exercise pens in A-Block yard at the start of the uprising. It appears that all inmate pens, and particularly all four-man pens, were empty before tear gas was visible in the pen area. Thus, there is a strong basis for the Hearing Officer's reasonable inference that petitioner, who said he was in a four-man pen, was not driven from his assigned location by tear gas as he claimed. Moreover, by leaving his assigned area, petitioner increased both the dimension of the takeover and the threat to institutional security which it represented. Further, petitioner was observed roaming the yard during the riot and made no showing that he was an unwilling partici-pant *(cf., Matter of Taylor v Coughlin,* 158 AD2d 881).

Petitioner's reliance upon *Matter of Bryant v Coughlin* (77 NY2d 642, *supra)* is misplaced. In *Bryant,* two inmates were found guilty of violation of rule 104.10 for participating in a riot in a mess hall at Great Meadow Correctional Facility in Washington County. The misbehavior reports providing the sole basis for those determinations alleged, without substantia-tion, that every inmate in the mess hall, including the peti-tioning inmates, was an active participant in the riot, impos-ing the burden on each inmate to disprove actual participa-tion in the disturbance *(supra,* at 649). The Court of Appeals held that such nonspecific evidence of individual participation in the riot could not support findings of a violation of rule 104.10. The instant matter is sharply distinguishable from *Matter of Bryant v Coughlin (supra).* First, the *Bryant* inmates were authorized to be in the mess hall at the time of the riot. Second, in this case, the Hearing Officer did not have to rely on the second-hand, blanket statements of correction officers that "all inmates participated". The videotape evidence per-mitted an inference that petitioner, in fleeing his pen together with other inmates, actively participated in the earliest phase of the riot *(cf., Matter of Bettis v Coughlin,* 186 AD2d 1080). Third, the uprising in the instant case was much lengthier than that in *Bryant,* offering petitioner more opportunity to distinguish himself as an unwilling bystander to the riot.

Petitioner further contends that several procedural errors warrant annulment. We disagree. The misbehavior report gave petitioner sufficient notice of the nature of the charge against him *(see,* 7 NYCRR 251-3.1 [c]). As this Court has held, it is "not necessary that the notice itemize in evidentiary detail all aspects of the case" *(Matter of Turner v Coughlin,* 162 AD2d 781, 782; *see, Matter of Lahey v Kelly,* 71 NY2d 135, 144; *Matter of Morales v Senkowski,* 165 AD2d 393, 395), especially in cases where misbehavior reports follow "the turbulence and chaos attendant upon a riot" *(Matter of Vogelsang v Coombe,* 105 AD2d 913, 914, *affd* 66 NY2d 835). We also reject petitioner's contention that the Hearing Officer impermissibly infringed upon his right to view the videotapes and photographic evidence. Petitioner waived his right by failing to request the opportunity to view this evidence at the hearing *(see, Matter of McClean v LeFevre,* 142 AD2d 911, 912) and, further, by failing to raise the issue on administrative appeal *(see, supra).* Nor was petitioner denied due process by respondent's failure to record the June 28, 1991 session. With the exception of the videotapes, the Hearing Officer did not rely on the information or exhibits presented at the session in making his determination *(see, Matter of Burnell v Coughlin,* 177 AD2d 1061; *Matter of Rodriguez v Coughlin,* 167 AD2d 671; *Matter of Hight v Coughlin,* 161 AD2d 1079, 1080; *see also, United States v Pierce Auto Lines,* 327 US 515, 528) and the "missing information [was] neither material to the determination nor of such significance as to preclude meaningful review" *(Matter of Rodriguez v Coughlin, supra,* at 671).

Petitioner's remaining arguments do not require extended discussion. We find no merit in petitioner's claim that the Hearing Officer was not impartial. Absent record evidence of bias or that the outcome of the hearing flowed from the alleged bias, the determination should not be set aside *(see, Matter of Nieves v Coughlin,* 157 AD2d 943, 944; *Matter of Agosto v Coughlin,* 153 AD2d 1008, 1008-1009; *Matter of Grant v Senkowski,* 146 AD2d 948, 949-950). Nor do we agree with petitioner that the penalty imposed, although severe, was so disproportionate to the offense as to be shocking to one's sense of fairness *(see,* 7 NYCRR 250.2 [c], [e]; *Cooper v Morin,* 49 NY2d 69, 82, *cert denied sub nom. Lombard v Cooper,* 446 US 984; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 234).

Weiss, P. J., Yesawich Jr., Crew III and Casey, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v