■ In the Matter of TIMOTHY FLETCHER, Petitioner, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, Respondent.—Harvey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to

review a determination of respondent which found petitioner guilty of violating certain prison disciplinary rules.

Petitioner was involved in the takeover of the special housing unit of Coxsackie Correctional Facility in Greene County on August 1, 1988 when inmates took five correction officers hostage and caused extensive property damage to the facility. As a result of this incident, a misbehavior report signed by Correction Sergeant Thomas McKernon was served upon petitioner charging him with several institutional violations. A second misbehavior report, served upon petitioner the next day and signed by Correction Sergeant Victor Perez, charged petitioner with violating rule 100.10 (assault), rule 100.20 (disturbing the order of the facility) and rule 104.10 (riot). Specifically, this report accused petitioner of taking an active role in the inmates' negotiations with prison officials and striking and kicking one of the hostages, Correction Officer Pratt. Following a Tier III hearing at which he denied the charges in the misbehavior reports, petitioner was found guilty of all charges and punishment was imposed. This determination was affirmed upon administrative appeal and petitioner commenced this CPLR article 78 proceeding, subsequently transferred to this court, to challenge the determination.

Respondent's determination must be confirmed. With respect to the first misbehavior report, we note that in previous proceedings arising out of the same incident and based upon the same misbehavior report, this court has found that the misbehavior report, combined with evidence that the petitioning inmate was out of his cell during the uprising, was sufficient to support the guilty determinations (see, Matter of Vitiello v Coughlin, 159 AD2d 791; Matter of Rosado v Coughlin, 157 AD2d 898, lv denied 75 NY2d 707; Matter of Collins v Coughlin, 156 AD2d 793, lv denied 75 NY2d 707). Petitioner testified that although he was locked in his cell when the disruption began, he was later let out of his cell by other inmates. The author of the first misbehavior report, McKernon, testified that petitioner participated in the melee and made verbal threats and gestures. McKernon stated that he personally observed petitioner assault a correction officer and that the investigation of the entire event revealed that petitioner was one of those who destroyed State property. This evidence provided substantial evidence of the charges against petitioner contained in the first misbehavior report (see, People ex rel. Vega v Smith, 66 NY2d 130, 139).

As for the second misbehavior report, these charges stem

from Perez's personal observations of petitioner's participation in the negotiations and assault on Pratt. Although petitioner's testimony that he had protected Pratt from being beaten at one point was corroborated to some extent by Pratt and other witnesses, with respect to the incident described by Perez where Pratt was struck in the ribs, Pratt stated that he did not know who assaulted him. At the hearing, petitioner challenged Perez's and McKernon's identification of him and attempted to establish that Perez had only limited opportunity to observe the events described in the second misbehavior report. These issues merely created credibility questions which the Hearing Officer, under the evidence presented, was free to decide against petitioner *(see, Matter of Abreu v Coughlin,* 157 AD2d 1028).

We also reject petitioner's contention that one of the misbehavior reports should be dismissed as being in violation of the rules against double jeopardy because both reports to some extent charge petitioner with the same rule violations for acts arising out of the same incident. The first misbehavior report was served on all 32 inmates who had been housed in the special housing unit at the time of the incident and contained a very generalized description of the incident which did not describe any specific actions by petitioner. The second report, on the other hand, was based on newly discovered evidence of the specific role petitioner played during part of the riot. Each report was based on different observations of petitioner's general and specific activity during the incident. In criminal prosecutions, "[s]eparately charged counts of a single crime are proper where each count requires proof of a fact that another count does not" *(People v Ohrenstein,* 153 AD2d 342, 436 [Sullivan, J., dissenting]). While duplicitous counts are prohibited in criminal indictments, multiplicity of counts is not *(see, supra).* Under these circumstances, we find nothing improper about some multiplicity of charges stemming from a complex 14-hour disturbance.

Determination confirmed, and petition dismissed, without costs. Kane, J. P., Casey, Weiss, Mercure and Harvey, JJ., concur.